David A. Sergenian (CA SBN 230174)
Sergenian Law
2355 Westwood Blvd. #529
Los Angeles, CA 90064
(213) 435-2035
david@sergenianlaw.com

John M. Desmarais (CA SBN 320875)
Gabrielle E. Higgins (CA SBN 163179)
Desmarais LLP
101 California Street
San Francisco, CA 94111
jdesmarais@desmaraisllp.com
ghiggins@desmaraisllp.com

Kerri-Ann Limbeek (admitted *pro hac vice*)
Frederick J. Ding (admitted *pro hac vice*)
Joze Welsh (admitted *pro hac vice*)
Jun Tong (admitted *pro hac vice*)
Deborah J. Mariottini (admitted *pro hac vice*)
Vi T. Tran (admitted *pro hac vice*)
Desmarais LLP
230 Park Avenue
New York, NY 10169
T: 212-351-3400
F: 212-351-3401
klimbeek@desmaraisllp.com
fding@desmaraisllp.com
jwelsh@desmaraisllp.com
jtong@desmaraisllp.com
dmariottini@desmaraisllp.com
vtran@desmaraisllp.com

***Counsel for Plaintiff Ravgen, Inc.***

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ravgen, Inc.,<br><br>    Plaintiff,<br><br>        v.<br><br>Quest Diagnostics Incorporated,<br><br>    Defendant. | Case No. 2:21-cv-09011-RGK-GJS<br><br>**RAVGEN'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING *INTER PARTES* REVIEW**<br><br>Hon. R. Gary Klausner<br><br>**Motion Filed**: Nov. 4, 2021<br>**Hearing Date**: Jan. 10, 2022 |

# TABLE OF CONTENTS

Pages

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND .............................................................................. 2

I.      RAVGEN AND THE PATENTS-IN-SUIT. ............................................. 2

II.     DIRECT COMPETITION BETWEEN RAVGEN AND QUEST. ............... 2

III.    THE PRECEDING 18 MONTHS OF LITIGATION. ................................. 3

LEGAL STANDARDS ...................................................................................... 6

ARGUMENT ..................................................................................................... 8

I.      A STAY WILL PREJUDICE RAVGEN—A MARKET COMPETITOR. ... 8

        A.     Ravgen and Quest are direct competitors. ............................... 8

        B.     A stay will harm Ravgen's ability to compete. ...................... 10

II.     A STAY WILL NOT SIMPLIFY THE ISSUES FOR TRIAL. ................. 12

        A.     Quest fails to show that all challenged claims are likely
               unpatentable. ......................................................................... 12

        B.     Quest's IPRs do not challenge all the asserted claims. ........ 14

        C.     Quest's IPRs will not stop it from continuing to assert invalidity ...... 15

III.    THE CURRENT STAGE OF THE CASE FAVORS DENYING A
        STAY. ..................................................................................................... 16

IV.     QUEST HAS NOT SHOWN A HARDSHIP IF A STAY IS DENIED. ...... 17

V.      THE TOTALITY OF CIRCUMSTANCES SUPPORTS DENIAL. ............ 18

CONCLUSION ................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

## <u>Cases</u>

*Acumed LLC v. Stryker Cor,*
    551 F.3d 1323 (Fed. Cir. 2008) ........................................................................ 8

*Advanced Electrolyte Techs. LLC v. Samsung SDI Co.,*
    No. A:17-CV-0030-LY, 2018 WL 11346890
    (W.D. Tex. Sept. 24, 2018) ............................................................................ 17

*Avanos Med. Sales, LLC v. Medtronic Sofamor Danek
    USA, Inc.,*
    No. 219CV02754JMPTMP, 2020 WL 7865959
    (W.D. Tenn. Nov. 24, 2020) ........................................................................... 10

*Biomet Biologics, LLC v. Bio Rich Med., Inc.,*
    No. SACV 10-1582 DOC, 2011 WL 4448972
    (C.D. Cal. Sept. 26, 2011) ........................................................................... 8, 9

*Carl Zeiss A.g. v. Nikon Cor,*
    No. 2:17-cv-07083-RGK-MRW, 2018 WL 5081479
    (C.D. Cal. Oct. 16, 2018) ........................................................... 7, 11, 15, 16

*Clinton v. Jones,*
    520 U.S. 681 (1997) ......................................................................................... 6

*Cont'l Can Co. USA v. Monsanto Co.,*
    948 F.2d 1264 (Fed. Cir. 1991) ..................................................................... 12

*Courtesy Prod., L.L.C. v. Hamilton Beach Brands, Inc.,*
    No. CV 13-2012-SLR/SRF, 2015 WL 5145526
    (D. Del. Sept. 1, 2015) ................................................................................... 14

*DMF, Inc. v. AMP Plus, Inc.,*
    No. 218CV07090CASGJSX, 2019 WL 9077477
    (C.D. Cal. Dec. 13, 2019) ........................................................... 7, 15, 16, 17

*Fed. Deposit Ins. Cor v. Van Dellen,*
    No. CV 10-4915 DSF (SHX), 2012 WL 12885103
    (C.D. Cal. July 23, 2012) ............................................................................... 18

*Intell. Ventures I LLC v. T Mobile USA, Inc.,*
    No. 2:17-CV-00577-JRG, 2018 WL 11363370 (E.D. Tex. Dec. 13, 2018) . 11

*Intell. Ventures I LLC v. Toshiba Cor,*
    No. CIV. 13-453-SLR/SRF, 2015 WL 3773779 (D. Del. May 15, 2015) .... 11

**Pages**

*Intell. Ventures II LLC v. Kemper Cor*,
   No. 6:16-CV-0081, 2016 WL 7634422 (E.D. Tex. Nov. 7, 2016) .............. 15

*Kerr Mach. Co. v. Vulcan Indus. Holdings, LLC*,
   No. 6-20-CV-00200-ADA, 2021 WL 1298932
   (W.D. Tex. Apr. 7, 2021) ............................................................. 16, 17

*Kirsch Rsch. & Dev., LLC v. Epilay, Inc.*,
   No. 220CV03773RGKJPR, 2021 WL 4732578
   (C.D. Cal. May 7, 2021) ...........................................................passim

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) .................................................................... 18

*Otto Bock HealthCare LP v. Ossur hf*,
   No. SACV1300891CJCANX, 2013 WL 12313020
   (C.D. Cal. Dec. 16, 2013) ......................................................... 8, 14

*Pipe Restoration Techs., LLC, v. Pipeline Restoration
   Plumbing, Inc.*,
   No. SACV1300499CJCRNBX, 2015 WL 13918253
   (C.D. Cal. Feb. 13, 2015) .......................................................... 7, 8

*Prime Healthcare Servs. v. Price*,
   No. SACV170171DOCAJW, 2017 WL 8223988
   (C.D. Cal. July 18, 2017)............................................................. 18

*Procter & Gamble Co. v. Team Techs., Inc.*,
   No. 1:12-CV-552, 2014 WL 533494 (S.D. Ohio Feb. 11, 2014)................. 10

*Realtime Adaptive Streaming LLC v. Adobe Sys. Inc.*,
   No. CV 18-9344-GW(JCX), 2019 WL 11717183
   (C.D. Cal. May 14, 2019) ............................................................. 11

SAS Institute, Inc. v. Iancu
   138 S.Ct. 1348 (2018) ................................................................. 14

*Scorpcast, LLC v. Boutique Media Pty Ltd.*,
   No. 220CV00193JRGRSP, 2020 WL 7631162
   (E.D. Tex. Dec. 22, 2020) ...................................................... 12, 14

*Tawnsaura Gr, LLC v. Maximum Hum. Performance, LLC*,
   No. CV1207189SJOAGRX, 2013 WL 12138687
   (C.D. Cal. Oct. 3, 2013)........................................................... 7, 17

*Toshiba Tec Cor v. Katun Cor*
   No. 15-cv-1979-SJO (JCx), 2016 WL 9137646
   (C.D. Cal. Sept. 21, 2016) ............................................................. 8

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
   943 F. Sup 2d 1028 (C.D. Cal. 2013).......................................... 7, 9

**Pages**

**Statutes**

35 U.S.C. § 101 ................................................................................................ 16

35 U.S.C. § 112 ................................................................................................ 16

35 U.S.C. § 311 ........................................................................................... 15, 16

35 U.S.C. § 314 ................................................................................................ 13

35 U.S.C. § 315 ........................................................................................... 15, 16

**Rules**

Fed. R. Civ. 1 .................................................................................................... 9

# **INTRODUCTION**

The Court should deny Defendant Quest Diagnostics Incorporated's ("Quest") Motion To Stay Pending *Inter Partes* Review, Dkt. 70 ("Motion").

Quest has failed to prove that a stay is warranted in this case.

***First***, Plaintiff Ravgen, Inc. ("Ravgen") and Quest are ***direct competitors*** in the prenatal genetic testing market. A stay will harm Ravgen's ability to compete in that market as Quest continues to use Ravgen's technologies without a license.

***Second***, a stay will not simplify the issues for trial. The Patent Trial and Appeal Board ("the Board") considered Quest's IPR petitions, which do not challenge all the asserted claims in this case, and explicitly stated that it ***cannot characterize those petitions as strong***. Quest's IPR petitions will not obviate a need for this Court to resolve issues of infringement and validity in this case, weighing against a stay.

***Third***, the current stage of the case favors denying a stay. Though there is currently no schedule in this case, which was transferred to this Court just one month ago, the parties have been litigating for ***over a year***, and the transferor court issued a claim construction order before transfer occurred. Ravgen's recently proposed schedule would resolve this case just one year from now. Thus, Quest has no basis to allege that this case is in its early stages, especially when it seeks to use discovery from Ravgen's ***other actions***, two of which should also reach trial next year, to streamline its defenses.

***Fourth***, Quest has failed to show—or even allege—any legitimate hardship or inequity if its stay motion is denied. The only "hardship" Quest alleges is litigating its infringement. But that is not a cognizable hardship in this District. Quest's ongoing infringement and the litigation thereof is not a basis to stay this case; to the contrary, Quest's infringement demonstrates a need for an expeditious resolution through trial.

***Finally***, the totality of circumstances in this case renders a stay inappropriate. A delay of ten months pending resolution of Quest's IPRs is not reasonable and is contrary

to the interests of justice.  Accordingly, for the reasons above and those herein, Ravgen respectfully requests that Quest's Motion be denied.

## FACTUAL BACKGROUND

### I.   RAVGEN AND THE PATENTS-IN-SUIT.

Ravgen is a biotechnology company that provides state of the art genetic testing. *See* Tran Ex. A at 1.[1]  It was founded with the goal of developing fetal DNA sequencing methods for patients seeking a prenatal test that is both safe and highly accurate.  *Id*. Ravgen met that goal with the inventions disclosed in several United States patents in the field of detection of genetic disorders, including U.S. Patent Nos. 7,332,277 ("the '277 patent") and 7,727,720 ("the '720 patent") (collectively, the "Patents-in-Suit"). Dkt. 1 ("Compl.") ¶¶ 15, 25–32.

Ravgen's founder, Dr. Ravinder Dhallan, is the inventor on the Patents-in-Suit. Compl. ¶¶ 15, 25–32.  Leading, peer-reviewed medical journals lauded Dr. Dhallan's work on the claimed inventions as laying the foundation for the development of accurate non-invasive prenatal diagnostic and cancer surveillance tests.  *Id*. ¶¶ 22–23; Compl. Ex. 20 (Journal of the American Medical Association editors describing the "profound clinical implications" of Dr. Dhallan's invention "for prenatal diagnosis and cancer surveillance"); Compl. Ex. 22 (peer reviewers at The Lancet stating that Dr. Dhallan's innovative test "opens a new era in prenatal screening").  In fact, Ravgen's inventions claimed in the Patents-in-Suit for preparing samples for analysis and detecting free nucleic acids were so innovative and important that Quest—like other competitors of Ravgen—adopted those technologies in its own non-invasive prenatal test: the QNatal Advanced test.  *See* Compl. ¶¶ 41–42, 45–47.

### II.   DIRECT COMPETITION BETWEEN RAVGEN AND QUEST.

Ravgen and Quest both participate in the non-invasive prenatal testing market.

---

[1] "Tran" refers to the Declaration of Vi T. Tran, filed concurrently herewith.

Ravgen offers prenatal Down syndrome testing and single gene disorder testing.  Tran Ex. A at 1.  Quest directly competes in that same market by offering its accused QNatal Advanced genetic screening.  Tran Ex. B at 1 ("The QNatal Advanced test can detect the most common [] fetal abnormalities: trisomy 21 (Down syndrome) . . . .").

Ravgen's and Quest's competitor status and market participation is recognized in the industry.  For instance, in reports concerning the prenatal testing market, Ravgen and Quest are identified as "prominent players" in the "prenatal and newborn genetic testing market."  *See* Tran Ex. C at 2; *see also, e.g., id.* Ex. D at 16 (identifying Ravgen and Quest as participants in the genomics-based non-invasive prenatal testing market).  Indeed, a Dun & Bradstreet report filed by Quest in this action identifies Quest as one of Ravgen's "[c]losest [i]ndustry [p]eers."  Dkt. 21-2 at 14.  Further, both Ravgen and Quest have laboratories accredited in the United States by the College of American Pathologists for performing their competing non-invasive prenatal testing.  *See* Compl. ¶ 48 (identifying Quest Diagnostics Nichols Institute); Tran Ex. E at 1; *id.* Ex. F at 1.

### III.   THE PRECEDING 18 MONTHS OF LITIGATION.

Ravgen previously had four cases in the Western District of Texas ("WDTX").  *See Ravgen, Inc. v. PerkinElmer, Inc*., No. 20-cv-00822 ("PerkinElmer Action"); *Ravgen, Inc. v. Natera, Inc*., No. 20-cv-00692 ("Natera Action"); *Ravgen, Inc. v. Quest Diagnostics, Inc.*, No. 20-cv-00972 ("Quest Action" or "this case"); *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 20-cv-00969 ("LabCorp Action") (collectively, the "WDTX Actions").  It currently has four additional cases in the District of Delaware.  *Ravgen, Inc. v. Myriad Genetics, Inc. et al.*, No. 1:20-cv-01730 ("Myriad Action"); *Ravgen, Inc. v. Illumina, Inc. et al.*, No. 1:20-cv-01644 ("Illumina Action"); *Ravgen, Inc. v. Progenity, Inc.*, No. 1:20-cv-01734 ("Progenity Action"); *Ravgen, Inc. v. Ariosa Diagnostics, Inc. et al.*, No. 1:20-cv-01646 ("Ariosa Action") (collectively, "the DE Actions") (the WDTX Actions and the DE Actions collectively "the Ravgen Actions").

**June 2020 – November 2020**.  Ravgen filed the PerkinElmer and Natera Actions on June 1, 2020, and the Quest and LabCorp Actions on October 16, 2020.  Those actions "involve overlapping issues, such as claim construction, invalidity, and conception and reduction to practice" of the claimed inventions because the actions concern the same Patents-in-Suit and overlapping asserted claims.  *See* Dkt. 52 at 9.

The Ravgen Actions also present overlapping issues of infringement.  The accused products in each action are substantially similar genetic tests that use blood specimens collected in the same cell-free DNA blood collection tubes—Ravgen alleges that each defendant's use of Streck, Inc.'s ("Streck") tubes in the accused products infringes the Patents-in-Suit.  *See, e.g.,* Compl. ¶ 45.

Due to the similarities between the Ravgen Actions, the WDTX Actions proceeded on coordinated schedules, aligning critical case events like *Markman* dates.  *See* PerkinElmer Action, Dkt. 35, 60; Natera Action, Dkts. 39, 66; Quest Action, Dkt. 40; LabCorp Action, Dkt. 40.

**December 2020 – March 2021**.  Quest filed its motion seeking transfer to this District on December 28, 2020—nearly 70 days after service of the Complaint.  Dkt. 21.  Quest never moved to stay or seek expedited review of its transfer motion.  As a result, the WDTX Actions proceeded to claim construction.

The District Court in WDTX held a joint *Markman* hearing in the PerkinElmer and Natera Actions on February 9, 2021, (PerkinElmer Action, Dkt. 61; Natera Action, Dkt. 60), during which the Court heard oral arguments and provided its constructions of the disputed claim terms.  Dkt. 52 at 9.  Consequently, the District Court became "very familiar" with the Patents-in-Suit, *id.*, and expended "substantial judicial resources" on them.  *Id.* at 10.[2]

**April 2021 – June 2021**.  Between April 15 and April 19, 2021, Quest filed four

---

[2] The PerkinElmer Action settled after *Markman*.  PerkinElmer Action, Dkt. 83.

*inter partes* review ("IPR") petitions: three petitions against the '277 patent (IPR2021-00788, IPR2021-00789, and IPR2021-00790) and one petition against the '720 patent (IPR2021-00791).   *See* Mot. at 2.   Ravgen served its preliminary infringement contentions in this case nearly eight months ago on April 30, 2021.  Tran Ex. G.  Quest served invalidity contentions nearly six months ago on June 25.  Tran Ex. H.

**July 2021 – October 2021**.  The District Court in WDTX denied Quest's transfer motion on August 20, 2021.  Dkt. 52.  On September 30—forty days after the District Court's transfer decision—Quest sought mandamus relief of the Court's order.  Quest's total delays in seeking transfer and mandamus relief totals just shy of 110 days.

The District Court in WDTX held a joint *Markman* hearing in the Quest and LabCorp Actions on September 20, 2021.  Dkt. 56.  After that hearing, Quest began discovery, serving discovery requests the next day.  *See* Tran Ex. Y.

The District Court in WDTX issued a written *Markman* decision in this case on October 5.  Dkt. 65.  Since then, Ravgen and Quest have responded to discovery requests and conferred about alleged deficiencies.  *See* Tran Exs. I-K.  Ravgen also served five third-party subpoenas, (*see* Tran Exs. L–P), which Ravgen is now litigating.

Importantly, in this action Quest seeks to build its case off discovery from other Ravgen Actions.  For example, Quest served requests for production in this case seeking "[a]ll transcripts of any of Ravgen's witnesses, including expert witnesses, current and former employees, and third parties," which notably includes Streck.  *See* Tran Ex. Q.  Quest wrote Ravgen on October 20, 2021 requesting that Ravgen "prioritiz[e] production of [those] transcripts" to "assist Quest in evaluating potential streamlining of discovery in this action."  *Id*.  Quest wrote Ravgen again on October 26 asserting that "[s]uch transcripts are clearly relevant and responsive," and that "Ravgen has no basis to withhold [the] transcripts, which include, for example, deposition testimony of the inventor of the patents asserted in this case and other individuals whose sworn testimony

is," Quest asserts, "indisputably relevant[.]"  Tran Ex. R.[3]

**November 2021-Present**.  On November 5, 2021, the Board instituted two of Quest's four IPR petitions, one directed at each Patent-in-Suit: IPR2021-00788 and IPR2021-00791 (collectively, the "Quests IPRs").[4]  Although the Board found that Quest "met its institution burden" in the Quest IPRs and therefore that it was required to institute on all challenged claims and grounds in those petitions, the Board clarified that it was "not prepared on this preliminary record to characterize [Quest's] challenge as especially 'strong.'"  Tran Ex. S at 37; *id.* Ex. T at 33.  Notably, Quest did not challenge in the Quest IPRs claim 95 of the '277 patent or claim 22 of the'720 patent, each of which Ravgen asserts against Quest in this case.  *See* Mot. at 1, 5–6.

The District Court issued a supplemental claim construction order in the Natera Action on November 8, 2021.  Natera Action, Dkt. 176.

On November 10, 2021, the Federal Circuit granted Quest's mandamus petition and ordered the District Court in WDTX to transfer this case to this District.

Ravgen and Quest previously filed a joint proposed scheduling order in this case that set trial for July 2022.  Dkt. 40.  However, in view of the transfer decision, Ravgen proposed an amended schedule to Quest last week setting trial five months later in December 2022.  Tran Ex. U.  That trial date is just two months later than Quest's last proposal to Ravgen.  Ex. V.  On December 17, 2021, this Court set a scheduling conference for February 14, 2022.  Dkt. 129.

## LEGAL STANDARDS

A decision whether to stay a case is within the sound discretion of the Court.  *See Clinton v. Jones*, 520 U.S. 681, 706 (1997).  "[T]here is no per se rule that patent cases should be stayed pending [PTAB proceedings], because such a rule would invite parties to unilaterally derail litigation."  *Pipe Restoration Techs., LLC, v. Pipeline Restoration*

---

[3] Ravgen ultimately agreed to produce transcripts of Ravgen's employee witnesses.
[4] The other two IPR petitions were denied.  *See* Mot. at 3 n.1.

*Plumbing, Inc.*, No. SACV1300499CJCRNBX, 2015 WL 13918253, at *1 (C.D. Cal. Feb. 13, 2015). Indeed, this Court has recognized that "litigation cannot be stayed every time a claim in suit undergoes reexamination—federal court calendars should not be hijacked in this manner." *Carl Zeiss A.g. v. Nikon Cor*, No. 2:17-cv-07083-RGK-MRW, 2018 WL 5081479, at *4 (C.D. Cal. Oct. 16, 2018) (internal quotations omitted); *see also Kirsch Rsch. & Dev., LLC v. Epilay, Inc.*, No. 220CV03773RGKJPR, 2021 WL 4732578, at *4 (C.D. Cal. May 7, 2021) (Klausner, J.), *reconsideration denied*, No. 220CV03773RGKRAO, 2021 WL 4704721 (C.D. Cal. Aug. 18, 2021); *DMF, Inc. v. AMP Plus, Inc.*, No. 218CV07090CASGJSX, 2019 WL 9077477, at *6 (C.D. Cal. Dec. 13, 2019) ("[A] court is under no obligation to delay its own proceedings by yielding to ongoing PTAB patent [re-exams]—even if [they] are relevant to the infringement claims before the Court."); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Sup 2d 1028, 1030-31 (C.D. Cal. 2013) (articulating "concern[] that allowing the progress of its docket to depend on the status of proceedings elsewhere can interfere with [the court's] obligation to secure the just, speedy, and inexpensive determination of every action.") (internal quotations omitted); *Tawnsaura Gr, LLC v. Maximum Hum. Performance, LLC*, No. CV1207189SJOAGRX, 2013 WL 12138687, at *2 (C.D. Cal. Oct. 3, 2013) ("If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts.").

Courts in this District "consider three factors when assessing whether to stay patent litigation pending IPR: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Kirsch*, 2021 WL 4732578, at *2. In addition, "the Court examines the totality of the circumstances," which includes "the Court's ability to control its docket to ensure that cases are managed in the interests of justice." *Id.* at *4.

## **ARGUMENT**

The Court should deny Quest's Motion because the stay factors and the totality of circumstances weigh in favor of denying a stay.

## **I.    A STAY WILL PREJUDICE RAVGEN—A MARKET COMPETITOR.**

"Prejudice to [a] patentee is heightened when parties to litigation are direct competitors[.]"  *Pipe*, 2015 WL 13918253, at *1.  Indeed, "in such cases, courts **presume** that a stay will prejudice the non-movant." *Id.*[5]; *see also Otto Bock HealthCare LP v. Ossur hf*, No. SACV1300891CJCANX, 2013 WL 12313020, at *3 (C.D. Cal. Dec. 16, 2013).  Consequently, "[c]ourts regularly find [the undue prejudice] factor weighs strongly against granting a stay where the parties are direct competitors." *Toshiba Tec Cor v. Katun Cor* No. 15-cv-1979-SJO (JCx), 2016 WL 9137646, at *4 (C.D. Cal. Sept. 21, 2016).  The prejudice against the non-movant weighs so strongly against a stay because "infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages." *Pipe*, 2015 WL 13918253, at *1; *Biomet Biologics, LLC v. Bio Rich Med., Inc.*, No. SACV 10-1582 DOC, 2011 WL 4448972, at *2 (C.D. Cal. Sept. 26, 2011) ("[B]ecause Defendants allegedly continue to infringe upon Plaintiffs' patent in direct competition with Plaintiff, a delay has the potential to cause severe prejudice.").  This Court has held that "[w]hen the parties are business competitors  . . . and the [patentee] may lose customers if the case does not proceed," a stay may result in prejudice to the patentee. *Kirsch*, 2021 WL 4732578, at *3; *see also Acumed LLC v. Stryker Cor*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) ("Infringement may cause . . . irreparable harm not remediable by a [] royalty.").

### **A.    Ravgen and Quest are direct competitors.**

There can be no credible dispute that Ravgen and Quest directly compete in the non-invasive prenatal testing market.  Both parties' websites show that they offer prenatal genetic screening and Down syndrome testing.  Tran Exs. A–B.  Ravgen

---

[5] All emphases are added unless stated otherwise.

accuses Quest's Down syndrome test—the QNatal Advanced test—of infringement in this case. Compl. ¶¶ 41–42, 45–47. Third-party evidence, including evidence provided by Quest in relation to its transfer motion, confirms Ravgen's and Quest's competition. *See* Tran Exs. C–D. And both parties' laboratories are accredited by the same organization for performing their competing non-invasive prenatal testing. *See* Tran Exs. E–F. Accordingly, the record shows a competitive relationship between the parties, which weighs against a stay. *Kirsch*, 2021 WL 4732578, at *3–*4.

The only explicit basis in Quest's Motion for the assertion that "Ravgen and Quest are not competitors" is that "Ravgen did not seek preliminary relief and . . . is not seeking lost profits." Mot. at 9–10. But that argument conflates litigation strategy with market competition. Ravgen is not required to seek preliminary relief or lost profits to compete with Quest or be considered a market participant. *Universal Elecs.*, 943 F. Sup at 1034 ("The fact that Plaintiff did not seek a preliminary injunction does not mean that it would not suffer prejudicial harm from its competitor's market activity during a lengthy delay[.]"); *Biomet*, 2011 WL 4448972, at *2 ("Defendants suggest[ion] that Plaintiffs are immune from irreparable injury because they did not seek a preliminary injunction . . . is flawed because Plaintiffs might have other reasons for deciding not to pursue injunctive relief at this stage[.]") (internal quotations omitted). The litigation decision not to seek such relief is ***not*** a reason to grant a stay or fail to find prejudice. To the contrary—it is a basis for this case to continue ***without delay*** "to secure the just, speedy, and inexpensive determination of" Ravgen's claims. Fed. R. Civ. 1; *Universal Elecs.*, 943 F. Sup 2d at 1030-31.

In addition, Quest seems to suggest that the timing of Ravgen's patent enforcement somehow shows that a stay is warranted.[6] Mot. at 2–3. However, the time

---

[6] Notably, Quest calculates Ravgen's "delay" from the date its infringing product went to market, not a date on which Quest has proven that Ravgen was aware of Quest's infringing product. *See* Mot. at 2. If Quest was aware of Ravgen's patents when it released its products that does not mean the inverse is true.

it took for Ravgen's enforcement strategy to come to fruition in no way demonstrates that a stay is warranted. Ravgen's rigorous enforcement of its patents against multiple, larger competitors emphasizes the need for an expeditious judgment, not a stay.

### B.   A stay will harm Ravgen's ability to compete.

The subtext of Quest's assertion of non-competition is that Quest does not consider Ravgen a competitor because of the parties' relative size. Though Ravgen's market share is relatively small compared to Quest's, the parties' comparative size does not diminish undue prejudice if a stay is granted. Here, it *increases* Ravgen's prejudice; extending the time to trial will allow Quest to continue selling its competing QNatal Advanced testing without a license to the Patents-in-Suit in the very market that Ravgen offers its own testing services.

For a smaller, practicing entity like Ravgen, receiving a judgment for past damages expeditiously rather than at some "indeterminate time in the future after a stay" will make "a material difference to [Ravgen's] business." *Kirsch*, 2021 WL 4732578, at 4. The longer that the other "prominent players" in the market continue to benefit from Ravgen's inventions without attribution, the more customers and recognition Ravgen will lose. Those harms—"permanent loss of marketshare and goodwill" (*see Avanos Med. Sales, LLC v. Medtronic Sofamor Danek USA, Inc.,* No. 219CV02754JMPTMP, 2020 WL 7865959, at *2 (W.D. Tenn. Nov. 24, 2020))—are "difficult to quantify[.]" *Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-CV-552, 2014 WL 533494, at *2 (S.D. Ohio Feb. 11, 2014). Yet, those are the exact harms that a stay will cause and that a speedy judgment will prevent. Indeed, a stay pending review and appeal of the IPR proceedings will bring the full weight of those harms upon Ravgen—a smaller yet well-respected pioneer in the prenatal testing market whose own technology is being used against it by Quest in the parties' market battle.

The patent laws are designed to protect Ravgen from the harms resulting from

Quest's ongoing infringement.  Ravgen's patent rights should not be sidelined while Quest continues to score market share and Ravgen's customers using Ravgen's patented technologies.  Indeed, even if Ravgen and Quest were not competitors (they are), Ravgen has a cognizable interest in the timely enforcement of its patent rights, which are presumed valid.  *Intell. Ventures I LLC v. T Mobile USA, Inc*., No. 2:17-CV-00577-JRG, 2018 WL 11363370, at *2 (E.D. Tex. Dec. 13, 2018) ("It is well established that Plaintiff's timely enforcement of its patent rights is entitled to some weight, even if that factor is not dispositive."); 35 U.S.C. § 282.  This is particularly true when delaying the case will have a negative impact on Ravgen's ability to enforce and license its patents.  *See Intell. Ventures I LLC v. Toshiba Cor*, No. CIV. 13-453-SLR/SRF, 2015 WL 3773779, at *2 (D. Del. May 15, 2015).  Courts have even recognized the prejudice caused by delay where the patentee, unlike Ravgen, is not a competitor and is seeking only monetary damages.  *See Realtime Adaptive Streaming LLC v. Adobe Sys. Inc.,* No. CV 18-9344-GW(JCX), 2019 WL 11717183, at *5 (C.D. Cal. May 14, 2019) (denying stay where plaintiff did not compete with defendant); *USC IP P'ship v. Facebook, Inc*., No. 6:20-CV-00555-ADA, Dkt. 66 at *2 (W.D. Tex. Aug. 5, 2021) ("[A] patent holder has an interest in the timely enforcement of its patent right, even when the patent holder has only sought monetary relief.") (internal quotations omitted).  That prejudice to Ravgen here is undue and further compounded by the numerous other infringers with whom Ravgen has engaged in licensing discussions, as those parties are presumably holding out hope that a defendant with whom Ravgen is already engaged in litigation might invalidate Ravgen's patents.  *See Intell. Ventures*, 2015 WL 3773779, at *2.

In addition, a stay will provide Quest a clear tactical advantage given the impending expiration dates of the Patents-in-Suit.  The '277 and '720 patents expire in March 2023.  This Court has held that placing a patent "in limbo" for much of its remaining life "create[s] a clear tactical disadvantage" for the patentee.  *Carl Zeiss*,

1    2018 WL 5081479, at *4; *see also Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d

2    1264, 1266 (Fed. Cir. 1991) ("[T]he patent property is a wasting asset, and justice is ill

3    served by delay in final resolution.").  That is exactly what will happen here with a stay.

4         Finally, and as further explained in Section II.A below, the prejudice to Ravgen

5    is particularly "undue" here because of the relative weakness of Quest's IPR petitions.

6    The PTAB refused to characterize Quest's petitions as "strong."  Tran Ex. S at 37; *id.*

7    Ex. T at 33.  Thus, a stay will permit Quest to continue harming Ravgen free of a

8    judgment based on nothing more than a "reasonable likelihood" that one or more, but

9    without question not all, asserted claims will be found invalid.  This Court should

10   instead deny a stay because of the substantial undue prejudice it will cause to Ravgen.

11   **II.    A STAY WILL NOT SIMPLIFY THE ISSUES FOR TRIAL.**

12        **A.    Quest fails to show that all challenged claims are likely unpatentable.**

13        To succeed in showing that Quest's Motion will simplify issues for trial, Quest

14   should be required to do "more than just point[] to a successful [IPR] petition[;]" it

15   should be required to show that "the Board is ***likely*** to invalidate every asserted claim."

16   *Scorpcast, LLC v. Boutique Media Pty Ltd.*, No. 220CV00193JRGRSP, 2020 WL

17   7631162, at *3 (E.D. Tex. Dec. 22, 2020); *USC IP*, Dkt. 66 at *4–*5.  Indeed, "[u]nless

18   the Board indicate[s] there is a serious chance it will invalidate all the asserted claims,

19   [this] Court [should] not needlessly" delay resolution of this case.  *Scorpcast*, 2020 WL

20   7631162, at *3.  Quest cannot make that showing here.

21        Far from indicating that there is a serious chance it will invalidate all asserted

22   claims, the Board stated that it was "not prepared on this preliminary record to

23   characterize [Quest's] challenge as especially 'strong.'"  Tran Ex. S at 37; *id.* Ex. T at

24   33.  Courts have found similar statements weigh against a likelihood of invalidating the

25   claims and granting a stay.  *See USC IP*, Dkt. 66 at *4–*5 (finding that movant "[did]

26   not show[] that the PTAB is likely to invalidate all asserted claims" because it

27

28

1    "specifically noted . . . that it cannot say that the merits of [movant's] IPR petitions are

2    particularly strong.") (internal citations omitted).  Similarly, this Court has found a

3    movant's assertion that claims "are likely to be invalidated by the PTAB" to be "highly

4    speculative" and refused to "presume to know how the PTAB may rule in the IPRs."

5    *Kirsch*, 2021 WL 4732578, at *3.

6          Here, Quest's entire motion is based on "speculat[ion]." *See, e.g.,* Mot. at 1–2

7    ("Ravgen is ***likely to*** . . . . Ravgen ***may also attempt*** . . . . [T]he parties ***would potentially***

8    . . . .").  And not only is Quest's speculation improper, it has no support in the record.

9    The Board in Quest's IPRs refused to characterize Quest's petition as "strong" despite

10   Quest's assertions to the contrary.  An institution decision establishes that "there is a

11   reasonable likelihood that the petitioner would prevail with respect to at least 1 of the

12   claims challenged in the petition," 35 U.S.C. § 314(a), but that "reasonable likelihood"

13   merely "encompasses a 50/50 chance."[7]  This Court's docket should not be beholden to

14   that coin-flip possibility of achieving marginal simplification.

15         Quest's speculation also conflicts with statistical evidence, which shows that

16   invalidation of all Ravgen's claims is indeed not likely.  To the contrary, there is a strong

17   likelihood Ravgen's claims will be found patentable.  According to the USPTO, "[l]ess

18   than 30% of challenged claims were found unpatentable by a preponderance of the

19   evidence in final written decisions" and 47% of instituted claims were not found

20   unpatentable in FY20.  Tran Ex. W at 16.[8]  Thus, in all likelihood, this case will proceed

21   before on one or more claims in the IPRs.  Quest therefore has not shown that the issues

22   in this case will be simplified.  The Court should deny the Motion as a result.[9]

---

23   [7]  See Official 2012 message from the Chief Judge of the PTAB, available at
24   https://www.uspto.gov/patents/laws/america-invents-act-aia/message-chief-judge-
     james-donald-smith-board (last accessed Dec. 19, 2021).
25   [8] Tran Ex. W is available at
     https://www.uspto.gov/sites/default/files/documents/ptab_aia_fy2020_roundup.pdf
26   (last accessed December 20, 2021).
     [9]  Any simplification in claim construction must consider the construction orders already
27   issued in the WDTX Actions, including the supplemental order in the Natera Action.

28

**B.     Quest's IPRs do not challenge all the asserted claims.**

Quest's instituted IPRs admittedly do not cover all the asserted claims of either of the Patents-in-Suit.  *See* Mot. at 1, 5–6.  Claim 95 of the '277 patent and claim 22 of the '720 patent will remain pending regardless of the outcome of the IPR proceedings.  Thus, under no circumstances will the instituted IPRs fully resolve the parties' dispute, weighing against a stay.  *See Otto*, 2013 WL 12313020, at *2 ("Here, however, the requested *inter partes* review is incapable of completely resolving the case in Össur's favor."); *Courtesy Prod., L.L.C. v. Hamilton Beach Brands, Inc.*, No. CV 13-2012-SLR/SRF, 2015 WL 5145526, at *2 (D. Del. Sept. 1, 2015) ("[T]he IPRs instituted by the PTAB do not address all of the claims at issue, meaning that the parties' dispute will not be fully resolved by the IPRs, regardless of the outcome of such" proceedings.).

Quest alleges that Ravgen's infringement assertions concerning the unchallenged claims are meritless because Ravgen's infringement contentions to-date are based on "information and belief."  Mot. at 1.  However, the parties are still in fact discovery, and Quest has not made a document production in ***over five months***.   Quest cannot blame Ravgen for its own failure to supplement its productions.

Quest further overstates the import of the Board instituting "95% of the asserted claims in this case (37 of 39 asserted claims)."  Mot. at 1 (emphasis removed).  That argument is misleading and does not favor a stay.  The Supreme Court in *SAS Institute, Inc. v. Iancu* ended the practice of partial institution by the PTAB and required institution on all patent claims challenged.  *See generally* 138 S.Ct. 1348, 1359 (2018).  Thus, in a decision to institute post-*SAS*, the PTAB was ***required*** to institute review of all patent claims challenged in the petition.  It is for that reason that courts today find institution decisions like Quest's not as "useful as they were in the past for providing an indication of whether all instituted claims would be found unpatentable." *Scorpcast*, 2020 WL 7631162, at *3.  Thus, "the fact that the PTAB has decided to institute an IPR as to each of the [c]laims" in the IPR proceeding "does not mean, as [Quest] suggests,

"that [Quest] *is likely to prevail*" on its challenges to" those claims. *See DMF*, 2019 WL 9077477, at *7 (emphasis in original). Indeed, the percentage of asserted claims in this case that were instituted fails to help Quest meet its burden of showing case-simplification.

### C. Quest's IPRs will not stop it from continuing to assert invalidity.

The Court should deny the Motion because a stay will not estop Quest from asserting invalidity. Congress limited the scope of IPR proceedings to "patents and printed publications," 35 U.S.C. § 311(b), and limited the scope of IPR estoppel to "any ground [of invalidity] that the petitioner raised or reasonably could have raised during" the IPR proceeding. 35 U.S.C. § 315(e); *Kirsch*, 2021 WL 4732578, at *2. Thus, courts have recognized that estoppel arising from IPR proceedings "may not actually simplify the issues at all" because "regardless of any estoppel, defendants have considerable latitude in using prior art systems[.]" *Intell. Ventures II LLC v. Kemper Cor*, No. 6:16-CV-0081, 2016 WL 7634422, at *3 (E.D. Tex. Nov. 7, 2016).

Here, Quest has indicated that it will indeed try to rely on prior art systems in this case to avoid the estoppel arising from its IPR petitions. For example, Quest listed nine alleged prior art systems in its invalidity contentions. Tran Ex. H at 25–28. Quest has already sought third-party discovery concerning one of those systems. Tran Ex. X at 12. Undoubtedly, Quest will assert that those theories could not be raised in the IPR proceedings and will seek to assert them here notwithstanding the final written decisions in the IPRs. That weighs against a stay. *Intell. Ventures*, 2016 WL 7634422, at *3.

Moreover, Quest asserts numerous invalidity defenses in this case other than prior art. For example, Quest's invalidity contentions include a fundamental challenge to proper inventorship for both Patents-in-Suit. Tran Ex. H at 64. That issue will not be addressed by the IPRs, weighing against a stay. *See, e.g., Carl Zeiss*, 2018 WL 5081479, at *3 (Defendants' dispute about whether Plaintiffs own the patents-in-suit

weighs against a stay).  Moreover, Quest asserts that ***every asserted claim*** is indefinite under 35 U.S.C. § 112 for lack of written description and/or enablement.  Tran Ex. H at 67–73.   Quest further alleges that "the claims" are "directed to patent ineligible concepts" under 35 U.S.C. § 101 and are further invalid under that statute for lacking "inventive concept."  *Id.* at 74–76.  Quest will continue to pursue each of those theories regardless of the outcome of the IPRs.   Thus, although Quest may be estopped from asserting certain prior art theories that could have been raised at the PTAB, Quest intends to challenge the validity of the Patents-in-Suit on many other grounds in this case.  *See* 35 U.S.C. §§ 311(b), 315(e).  For those reasons, a stay is ***not*** likely simplify the issues in this case.  *See USC IP*, Dkt. 66 at *4–*5.

## III.   THE CURRENT STAGE OF THE CASE FAVORS DENYING A STAY.

Quest characterizes this case as "in its early stages[.]"  Mot. at 8.  However, the parties have been litigating this case ***for fourteen months*** and have invested significant resources doing so; trial should be scheduled within just one year.  Tran Ex. U.

As this Court has recognized, "[t]he Court's expenditure of resources is an important factor in evaluating the stage of the proceedings." *Kirsch,* 2021 WL 4732578, at *2.  "[A] stay is not appropriate where the parties have fully briefed the issue of claim construction, attended a *Markman* hearing, and received a claim construction order." *DMF*, 2019 WL 9077477, at *6; *cf. Kerr Mach. Co. v. Vulcan Indus. Holdings, LLC*, No. 6-20-CV-00200-ADA, 2021 WL 1298932, at *3 (W.D. Tex. Apr. 7, 2021) ("Courts regularly measure the early stages of a case by whether the parties have started discovery and whether the court has issued a claim construction order.").

Here, Quest waited six months after being served with this lawsuit to initiate IPR. Mot. at 2; *see Carl Zeiss*, 2018 WL 5081479, at *4 (denying stay based on IPR filed six months after service of complaint).   Consequently, the parties completed claim construction briefing and the District Court in WDTX conducted a *Markman* hearing

and entered a claim construction order in this case prior to institution of the IPRs, Dkt. 65, and issued a supplemental claim construction order in the Natera Action three days afterwards. *See* Natera Action, Dkt. 176. "[T]o stay the case now would squander those efforts." *Kerr*, 2021 WL 1298932, at *3. Indeed, courts in this District have found a stay is not favored where, like here, "the parties have fully briefed the issue of claim construction, attended a *Markman* hearing, and received a claim construction order." *DMF*, 2019 WL 9077477, at *6 (denying stay). Accordingly, the timing of Quest's petition, the events that occurred prior to and since institution, and the reasonable time until an expected trial date in this case all render a stay inappropriate. *Tawnsaura*, 2013 WL 12138687, at *2 ("The case is not in the early litigation stages. Nine months have passed since the scheduling conference, and only ten months remain until trial."); *Advanced Electrolyte Techs. LLC v. Samsung SDI Co.*, No. A:17-CV-0030-LY, 2018 WL 11346890, at *2 (W.D. Tex. Sept. 24, 2018) (denying stay when trial was over a year away but claim construction had been resolved).

Further, and consistent with Quest's own assertions, a determination of the stage of this case must factor in how Ravgen's other actions may facilitate Quest's litigation. As explained above, Quest is seeking to build its case off discovery from Ravgen's other actions. Indeed, Quest has repeatedly demanded "[a]ll transcripts of any of Ravgen's witnesses, including expert witnesses, current and former employees, and third parties," which notably includes Streck—a material third party in this case. Quest asserts that those transcripts will "assist [it] in [] streamlining [] discovery in this action." Tran. Ex. Q. Thus, to the extent such transcripts are discoverable—Quest cannot allege that this case is "in [its] early stages" as if it is entering the case anew. The discovery from the other Ravgen Actions—to the extent Quest is permitted to use and access it—must be accounted for to find that this case is not in its "early stages."

## IV.    QUEST HAS NOT SHOWN A HARDSHIP IF A STAY IS DENIED.

Under Supreme Court precedent, "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward[] if there is even a fair possibility that the stay for which he prays will work damage to [someone] else." *Prime Healthcare Servs. v. Price*, No. SACV170171DOCAJW, 2017 WL 8223988, at *3 (C.D. Cal. July 18, 2017) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). Quest has failed to establish a clear case of hardship or inequity here. Indeed, the only possible "hardship" Quest identifies is the mere act of litigating its infringement. Quest calls this litigation "extensive and burdensome" and lists the mere milestones of a patent case—"fact discovery, expert discovery, summary judgment, pre-trial filings, and trial"—as reasons to grant the Motion. Mot. at 1. But mere litigation is not hardship that warrants a stay in view of the substantial prejudice to Ravgen. *See Fed. Deposit Ins. Cor v. Van Dellen*, No. CV 10-4915 DSF (SHX), 2012 WL 12885103, at *2 (C.D. Cal. July 23, 2012) ("That denial of the stay would force Defendants to proceed with the litigation is insufficient.").

Further, Ravgen notes that this Court "has a strong interest in keeping scheduled dates certain." Standing Order Regarding Newly Assigned Cases § 6. The Court requires that "a stipulation to continue the date of any matter . . . ***must*** be supported by a sufficient basis" and "compelling factual support" including "a ***detailed*** declaration of the grounds for the requested continuance." *Id.* (emphases in original). Such support is required to continue the date of "any" matter by "stipulation," yet Quest fails to provide anything close to that standard in seeking an ***opposed*** delay that could last ***years***. Quest's failure to identify any hardship weighs strongly against a stay.

## V.     THE TOTALITY OF CIRCUMSTANCES SUPPORTS DENIAL.

In considering the totality of circumstances in this case, the Court should rule like it did in *Kirsch* and find a stay unwarranted. In *Kirsch*, the patentee asserted two patents in CDCA and asserted one of those patents in a parallel litigation at the International

Trade Commission. *Kirsch*, 2021 WL 4732578, at *1. Two IPRs were instituted on one of those patents, while the other patent "shar[ed] the same, sole inventor," was "assigned to the same entity," was "directed to the same basic subject-matter," and was "asserted against the exact same [] [a]ccused [p]roducts." *Id.* at *3. The Court found that undue prejudice to the patentee weighed in favor of denying a stay because of the competitive relationship between the parties. *Id.* at *4. As to simplification of the issues, the Court found that "the PTAB may issue a validity ruling . . . that is favorable to Defendant" on the instituted patent,[10] and noted "a potential for overlapping issues" with the un-instituted patent. *Id.* at *3. However, the Court found that "the value in the simplification of the issues" regarding the un-instituted patent was "outweighed by the substantial delay," totaling nine to twelve months, "that a stay pending the IPRs would entail." *Id.* at *3. The stage of the case in *Kirsch* "weigh[ed] slightly in favor of a stay" because discovery was not yet complete, trial was not yet set, there was no scheduling order, and the "Court [had] not [yet] expended a great deal of resources on [the] matter[.]" *Id.* at *3. However, though the Court found each of the stay factors "largely neutral," it held that a stay was still not warranted under the totality of circumstances because staying the case for nine to twelve months pending the IPRs "would cause unreasonable delay and would be contrary to the interests of justice." *Id.* at 4.

What was contrary to the interests of justice in *Kirsch* is contrary to the interests of justice here: (1) Ravgen's and Quest's competitive relationship weighs against a stay; (2) "the value in the simplification of the issues" (if any) from the IPRs is "outweighed by the substantial delay" of ten months that will elapse while those IPRs are resolved, and any simplification is limited in any event because not all asserted claims are subject to the IPRs; (3) this Court has not yet expended significant resources in this case, though the parties have; and (4), in view of the totality of the circumstances, a delay of ten

---

[10] The movant in *Kirsch* submitted to full IPR estoppel despite not being the petitioner.

months pending resolution of the IPRs "would cause unreasonable delay and would be contrary to the interests of justice."  *See Kirsch*, 2021 WL 4732578, at *3–*4.  For at least those reasons, the Court should rule like it did in *Kirsch* and deny Quest's Motion.

## **CONCLUSION**

For the reasons herein, Ravgen respectfully requests that the Court deny Quest's Motion and adopt an expeditious schedule at the February 14 conference.

Dated: December 20, 2021        */s/ Kerri-Ann Limbeerk*
                                David A. Sergenian (CA SBN 230174)
                                SERGENIAN LAW
                                2355 Westwood Blvd. #529
                                Los Angeles, CA 90064
                                (213) 435-2035
                                david@sergenianlaw.com

                                John M. Desmarais (CA SBN 320875)
                                Gabrielle E. Higgins (CA SBN 163179)
                                DESMARAIS LLP
                                101 California Street
                                San Francisco, CA 94111
                                jdesmarais@desmaraisllp.com
                                ghiggins@desmaraisllp.com

                                Kerri-Ann Limbeek (admitted *pro hac vice*)
                                Frederick J. Ding (admitted *pro hac vice*)
                                Joze Welsh (admitted *pro hac vice*)
                                Jun Tong (admitted *pro hac vice*)
                                Deborah J. Mariottini (admitted *pro hac vice*)
                                Vi T. Tran (admitted *pro hac vice*)
                                DESMARAIS LLP
                                230 Park Avenue
                                New York, NY 10169
                                T: 212-351-3400
                                F: 212-351-3401
                                klimbeek@desmaraisllp.com
                                fding@desmaraisllp.com
                                jwelsh@desmaraisllp.com
                                jtong@desmaraisllp.com
                                dmariottini@desmaraisllp.com
                                vtran@desmaraisllp.com

                                ***Counsel for Plaintiff Ravgen, Inc.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service were served with a copy of the foregoing via the Court's CM/ECF system on DECEMBER 20, 2021.

Dated: December 20, 2021

*/s/ Kerri-Ann Limbeek*

Kerri-Ann Limbeek (admitted *pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
T: 212-351-3400
F: 212-351-3401
klimbeek@desmaraisllp.com

*Counsel for Plaintiff Ravgen, Inc.*